UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:19-cr-00169-JAW-1 |
| | ) | |
| CODY LYON | ) | |

**ORDER DENYING MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE**

The Court rejects a request from a defendant for early termination of his supervised release due to the serious nature of his crimes, the objections of the Probation Office and the victim, the seriousness of the defendant's mental health and drug and alcohol abuse issues, and the relatively minimal intrusion on the defendant's life under his current revised supervised release conditions.

**I.     BACKGROUND**

   **A.     Procedural Background**

On September 10, 2019, a federal grand jury indicted Cody Lyon on three counts of making threatening interstate communications, violations of 18 U.S.C. § 875(c).  *Indictment* (ECF No. 21) (*Indictment*).  Mr. Lyon pleaded guilty to all three counts on March 2, 2020, *Min. Entry* (ECF No. 51), and on October 14, 2020, the Court sentenced him to a time-served period of incarceration, three years of supervised release, a $15,000 fine, and a $300 special assessment.  *Min. Entry* (ECF No. 68); *J.* (ECF No. 69).  On December 9, 2021, Mr. Lyon filed a pro se motion for early termination of supervised release.  *Def.'s Mot. to Terminate Supervised Release (Rule 32.1)* (ECF No. 77) (*Def.'s Mot.*).

On January 3, 2022, the Government responded, objecting to the early termination. *Gov't's Resp. in Opp'n to Def.'s Mot. to Terminate Supervised Release* (ECF No. 78) (*Gov't's Opp'n*). As Mr. Lyon's crimes involved threats of injury against an individual victim and the Government's memorandum did not include information about the position of the victim regarding early termination, on January 10, 2022, the Court ordered the Government to notify the victim of Mr. Lyon's request and to supplement its memorandum. *Order* (ECF No. 79). On January 12, 2022, the Government supplemented its response. *Gov't's Suppl. Resp. in Opp'n to Def.'s Mot. to Terminate Supervised Release* (ECF No. 80) (*Gov't's Suppl. Resp.*).

On January 14, 2022, Mr. Lyon replied. *Def.'s Reply to Opp'n to Mot. to Terminate Supervised Release (Rule 32.1)* (ECF No. 81) (*Def.'s Reply*).

### B.  Factual Background

#### 1.  The Crimes

The factual backdrop to Mr. Lyon's federal offenses is somewhat convoluted. On May 30, 2019, the Department of Homeland Security, Customs and Border Patrol (CBP), seized a package from China to be delivered to an address in Winthrop, Maine. *Revised Presentence Investigation Report* at 4 (ECF No. 55) (*PSR*). CBP seized this package because it was from a Chinese shipper who had previously shipped pill press dies in violation of 21 U.S.C. § 331. *Id.* CBP opened the package and found it contained two sets of Xanax pill die presses. *Id.*

The addressee at the Winthrop mailing address was Source of Information 1 (SI-1). The Department of Homeland Security, Homeland Security Investigations

Unit (HSI) interviewed SI-1 and SI-1 denied ordering the pill press dies and denied knowing anyone who would have ordered the dies using SI-1's address. *Id.* HSI searched SI-1's house and found nothing of investigative significance. *Id.*

SI-1 then attempted to discover who misused his address as the address for the Chinese supplier to send the pill dies and Cody Lyon was one of the people SI-1 suspected might have done such a thing. *Id.* Confronted by SI-1, Mr. Lyon was initially apologetic and told SI-1 that SI-1 had every right to be angry and promised to leave SI-1 alone. *Id.* SI-1 contacted law enforcement and gave them Mr. Lyon's name as the likely culprit and showed a Food and Drug Administration agent the text exchanges between SI-1 and Mr. Lyon. *Id.*

On June 14, 2019, SI-1 received another package from California that SI-1 had not ordered, and SI-1 contacted law enforcement. *Id.* Like the first package, this package contained two sets of Xanax pill die presses. *Id.* SI-1 also told law enforcement that Mr. Lyon was a drug user and manufactured Xanax at his home in Manchester, Maine. *Id.*

During the evening of June 15, 2019, Mr. Lyon left eight threatening voicemail messages for the investigating law enforcement agent on the cellphone law enforcement had used in place of SI-1's cellphone. *Id.* All the messages were left from 11:14 to 11:49 p.m. on June 15, 2019. *Id.* In extreme, coarse, and violent language, Mr. Lyon told the agent that he knew where the agent lived, he twice threatened to put a bullet in the agent's head, he threatened to rape the agent's daughter and to chop off agent's head, and he informed the agent that he had

numerous firearms, including two fully-loaded AK-47s. *Id.* at 5. Mr. Lyon was arrested by warrant on August 23, 2019. *Id.* When law enforcement searched Mr. Lyon's home, they found ammunition and numerous firearms, including two AK-47s. *Id.* The grand jury indicted Mr. Lyon based on the three voicemail threats to kill the law enforcement agent. *Id.* at 4; *Indictment* at 1-2.

### 2. The Sentencing Hearing

On October 14, 2020, the Court held a sentencing hearing by videoconference. *Tr. of Proceedings*, *Sentencing* (ECF No. 71) (*Tr.*). Without objection, the Court calculated Mr. Lyon's guideline sentence range as 24 to 30 months, a fine range of $10,000 to $95,000, a period of supervised release of one to three years, and a $100 special assessment per count. *Statement of Reasons* at 1 (ECF No. 70). However, as Mr. Lyon had agreed to proceed by videoconference during the pandemic, the Government recommended that the Court vary downward two levels from the guideline total offense level, which resulted in a new variant sentence range of 18 to 24 months of incarceration. *Tr.* at 51:2-7. Mr. Lyon had been detained from August 23, 2019 to September 20, 2019, a total of twenty-eight days. *PSR* at 1.

In its sentencing memorandum, the Government recommended that the Court impose a sentence within the variant guideline sentence range of 18 to 24 months. *Gov't's Sentencing Mem.* at 3-4 (ECF No. 64). Mr. Lyon's counsel urged the Court to impose a time served sentence of incarceration, a six-month term of home detention, and "three years of supervised release." *Def.'s Mem. in Aid of Sentencing* at 11 (ECF No. 63).

During defense counsel's sentencing argument, Attorney McKee stressed Mr. Lyon's history of drug and alcohol abuse, his need for ongoing treatment, his otherwise stable family life, his impressive work ethic, and the change in Mr. Lyon brought about by the federal prosecution. *Tr.* at 24:16-34:21. Mr. Lyon during his allocution recognized that supervised release would be part of his punishment:

> Being on supervised release is something I certainly accept as part of what is necessary for the Court to ensure that I do not slip back into my old ways, but I am not going to do that.

*Id.* at 48:2-5.

Because of the seriousness of Mr. Lyon's crimes, particularly the threat to kill a law enforcement officer and rape a family member of the officer, the Court struggled with the appropriate sentence. *Id.* at 51:18-64:16. The Court noted that it considered the reduced guideline range of incarceration for eighteen to twenty-four months appropriate for the crimes Mr. Lyon committed. *Id.* at 63:6-12. Nevertheless, the Court was strongly influenced by the then state of the COVID-19 pandemic and, in particular, the difficulty the prison system was encountering in controlling the virus. *Id.* at 64:3-8. The Court therefore acceded to defense counsel's recommendation of a time-served sentence, six-months of home confinement, and three years of supervised release; it also imposed a fine of $15,000 and a $100 special assessment per count. *Id.* at 63:13-67:23. The Court imposed this sentence with reluctance and stressed to Mr. Lyon the need to comply with the terms of supervised release as part of his sentence. *Id.* at 62:10-63:5.

## II. THE PARTIES' POSITIONS

5

### A.     Cody Lyon's Petition

Mr. Lyon observes that he began his period of supervised release on October 14, 2020 and therefore, under the terms of the supervised release statute, he is now eligible for early termination of supervised release. *Def.'s Mot.* at 1 (citing 18 U.S.C. § 3583(e)(1)). Mr. Lyon says that he has been reduced to "the lowest possible level of monitoring available." *Id.* Mr. Lyon declares that "[h]is progress since imposition of supervised release as well as the interests of justice are not served by continuing his supervised release at this time." *Id.* He notes that he is no longer required to engage in counseling, has paid his fine in full, is renovating his home, and is starting his own business apart from the family business. *Id.* at 2.

### B.     The Government's Response and Supplemental Response

In its response, the Government notes that the imposition of a term of supervised release is part of a defendant's punishment for his crime. *Gov't's Opp'n* at 1. Observing that Mr. Lyon has complied with the conditions of supervised release, as he is expected to, the Government argues that mere compliance with these terms typically does not justify early termination of supervised release. *Id.* at 1-2. The Government also contends that Mr. Lyon has not identified any hardships or change of circumstances warranting early termination. *Id.* at 3. It concludes that in this case "the § 3553(a) factors and the interest of justice weigh in favor of continued supervised release." *Id.* In its supplemental filing, the Government confirmed that the victim in this case objects to early termination. *Gov't's Suppl. Opp'n* at 1.

### C.     Cody Lyon's Reply

In his reply, Mr. Lyon argues that he has not merely complied with the conditions of supervised release, but that he has exhibited extraordinary rehabilitation warranting early termination. *Def.'s Reply* at 1. Mr. Lyon says that his criminal conduct was related to untreated mental health issues and he has now received treatment for those underlying conditions. *Id.* at 2. He also notes that part of his offense related to threats to use firearms and he no longer possesses or has access to firearms, pursuant to his lifetime prohibition, rendering one of his special conditions "redundant and unnecessary for assuring protection of the public." *Id.*

### III.   DISCUSSION

The standard by which a request for early termination is evaluated is whether the petitioner has satisfied the court that "such action is warranted by the conduct of the defendant released" and is in "the interest of justice." 18 U.S.C. § 3583(e)(1). The term of supervised release is imposed to serve "the twin purposes of protecting the public from future crime and encouraging [a defendant's] rehabilitation." *United States v. Shafer*, No. 03-cr-90-GZS, 2008 U.S. Dist. LEXIS 98446, at *3 (D. Me. Sept. 30, 2008).

The Court acknowledges that Mr. Lyon has done well to date on supervised release. This is much to his credit. Nevertheless, "compliance with the terms and conditions of . . . supervised release, though laudable, is generally not grounds for early termination." *United States v. Seger*, No. 1:98-cr-00065-JAW, 2014 U.S. Dist. LEXIS 151558, at *17 (D. Me. Oct. 27, 2014) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

7

The Court recalls Mr. Lyon well and recalls the extensive drug and alcohol abuse that led to his commission of these federal crimes. According to his own clinical psychologist, Mr. Lyon had some significant underlying mental health issues. Furthermore, he was abusing drugs and alcohol at an intense, dangerous rate, smoking marijuana and abusing Xanax daily, and abusing other drugs, including cocaine. He struggled with alcohol abuse and, in fact, was intoxicated when he left the multiple threatening voicemails on the law enforcement officer's cellphone. Moreover, Mr. Lyon had been brought to law enforcement's attention by virtue of his ordering pill die presses from China to create fake Xanax pills. During the sentencing hearing, the Court inferred that the reason Mr. Lyon wanted these pill die presses was to distribute Xanax – either real or fake – to customers.

Furthermore, Mr. Lyon's crimes threatened a law enforcement officer who was attempting to perform his official duties. As serious as the death threats were against the officer, Mr. Lyon took his threats to another even more troubling level, when he told the officer that he knew the officer's family and he was going to rape the officer's daughter. Considering the violent and vile nature of these threats, the Court takes into consideration the officer's understandable objection to early termination.

Mr. Lyon points out that his supervised release conditions have been reduced. On December 22, 2020, at the recommendation of the Probation Office, the Court removed the mental health condition and the financial reporting conditions. *Req. for Modifying the Conditions or Term of Supervision with the Consent of the Offender* (ECF No. 73); *Order* (ECF No. 74). Mr. Lyon says that his supervised release requires

him only to "log into a portal online and to enter information and answer questions on a monthly basis." *Def.'s Mot.* at 1.

Finally, in evaluating Mr. Lyon's motion, the Court has considered the overall sentence in this case. During its sentencing remarks, the Court stated that it considered the eighteen to twenty-four month recalculated variant guideline range to be a just sentence range in Mr. Lyon's case. If the Court had imposed the bottom of the variant guideline range sentence against Mr. Lyon—of eighteen months incarceration—Mr. Lyon would now be in the early stages of his term of supervised release. At the sentencing hearing, as noted earlier, Mr. Lyon's defense counsel and Mr. Lyon himself urged the Court to consider that he faced a period of supervised release as part of his punishment in urging an extremely, perhaps excessively, lenient period of incarceration.

Despite the Court's reluctant acquiescence, from Mr. Lyon's perspective, as this motion demonstrates, it seems that the Court cannot be lenient enough. The Court disagrees. When the Court imposed its time-served sentence, it considered the three-year period of supervised release as essential to its calculus, and the Court rejects Mr. Lyon's attempt to carve out even less of a punishment for what was undoubtedly serious and threatening criminal conduct. To release Mr. Lyon early from supervised release would, in the Court's view, undercut the Court's overall sentencing assessment, a result that would not, in the Court's view, be just. In view of the seriousness of his federal crimes, the relative leniency of his incarcerative sentence, the extent of his underlying mental health issues, the extensiveness of his

9

drug and alcohol abuse issues, the objections of the Probation Office and the victim to early termination, and the comparatively minimal impact continued supervised release will have on Mr. Lyon, the Court rejects his motion for early termination, despite his commendable progress while on supervised release. In short, "the Court understands that supervised release is part of his sentence and to remain under supervised release restricts Mr. [Lyon]'s freedom. In this case, the Court balances the incremental intrusion of these supervised release conditions on Mr. [Lyon]'s life against the inherent risk of the conduct underlying his conviction." *United States v. Chapman*, No. 1:06-cr-00056-JAW, 2014 U.S. Dist. LEXIS 124770, at *5 (D. Me. Sept. 8, 2014).

## IV.   CONCLUSION

The Court DENIES Cody Lyon's Motion to Terminate Supervised Release (Rule 32.1*)* (ECF No. 77).

SO ORDERED.

/s/  John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 7th day of April, 2022